IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES DLESTER CRANDLE, AIS 291646, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-cv-627-ECM-JTA |
| | ) | (WO) |
| NURSE BLESSING EPEAGBA,[1] et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.    INTRODUCTION

*Pro se* Plaintiff James Crandle is confined at the Fountain Correctional Facility in Atmore, Alabama. Crandle brings this 42 U.S.C. § 1983 action alleging that his federally protected rights were violated through a failure to provide adequate medical care. Doc. No. 1 at 2–3. Crandle names as defendants Nurse Blessing Epeagba, Dr. Jean Darbouze,[2] Dr. Wilcotte Rahming, Nurse Fallon Miles,[3] and Wexford Health Care.[4] *Id.* at 1, 2. Crandle seeks $1 million in damages for pain and suffering and requests that criminal charges be

---

[1] Incorrectly identified in the Complaint as "Dr. Blessing." Doc. No. 1 at 1.

[2] Incorrectly identified in the Complaint as "Dr. Barbouse." Doc. No. 1 at 1.

[3] Incorrectly identified in the Complaint as "Nurse Myles." Doc. No. 1 at 1.

[4] The Court previously dismissed Crandle's Complaint against Dr. Wesley Barry and the Kilby Correctional Facility. Docs. No. 23, 40.

brought against Defendants for failing to give him prescribed pain medication and not helping him understand the doctors.[5] *Id.* at 4.

Defendants filed Answers and Special Reports with supplements and supporting evidentiary materials addressing Crandle's claims. Docs. No. 19, 22, 25, 26, 33, 35, 36, 39. In their reports, Defendants deny they acted in violation of Crandle's constitutional rights. After reviewing the Special Reports, as supplemented, the Court issued an Order on February 2, 2022, requiring Crandle to respond to the reports with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 41 at 2. The Order specifically cautioned that the "Court may at any time [after expiration of the time for Crandle to file a response] and without further notice to the parties (1) treat the [Special] Reports and any supporting evidentiary materials as a … motion for summary judgment …, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." *Id*. at 2–3. Pursuant to the February 2,

---

[5] Crandle's request that criminal charges be filed against Defendants for the alleged violation of his constitutional rights cannot be granted. Doc. No. 1 at 4.  Under the U.S. Constitution, the Executive Branch of the federal government—not the Judicial Branch—is responsible for conducting criminal investigations and, if warranted, initiating criminal charges. The Constitution precludes the federal courts from interfering in these responsibilities of the Executive Branch. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) (explaining that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) (holding that "[t]he decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced."). Additionally, a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another," *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (holding that plaintiff has no constitutional right to have a defendant prosecuted). .

2022, Order, the Court now treats Defendants' Special Reports as motions for summary judgment and concludes the motions are due to be granted.

## II.   JURISDICTION AND VENUE

This court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama, Northern.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … .   [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact. *Id*. at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *See*

*Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Summary judgment also should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In determining whether a genuine dispute of material fact exists, the Court must view all the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). "At the summary judgment stage, this Court should accept as true "statements in [plaintiff's] verified complaint, [any] sworn response to the [defendant's] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (quotation marks and citation omitted) (observing that "[t]o be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed.*

*Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997), *abrogated by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019), (noting that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

## IV.  BACKGROUND[6]

### A.  Crandle's sworn allegations

Crandle filed this action on September 21, 2021, while incarcerated at Kilby Correctional Facility. On September 10, 2021, Crandle underwent hernia surgery at Jackson Hospital in Montgomery, Alabama. Doc. No. 1 at 2. A physician at the hospital prescribed Crandle pain medication, but when Crandle returned to Kilby the evening of September 10, 2021, the doctors and nurses had changed his pain medication. *Id.* at 2–3. Crandle maintains he never received the prescription written by the physician at

---

[6] When facts are in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). Accordingly, the facts set forth here are viewed in Crandle's favor for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400, *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (citation omitted) (explaining that "what we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts").

Jackson. *Id.* Because he continued to experience stomach pain, Crandle states medical staff kept him in the infirmary until September 14, 2021. *Id.* at 3. While in the infirmary, Crandle informed the nurses and doctors several times that the medicine he was receiving was not working, he was still in pain, and he could not take the medicine they prescribed because it was a blood thinner and it made him nauseous. *Id.* Crandle also requested that medical staff change his bandages, which had not been changed since his surgery. *Id.* Finally, Crandle states  Dr. Rahming and Dr. Darbouze only checked on him once each prior to releasing him to his dorm on September 14, 2021.[7]

## B.    Defendants' factual responses and other record evidence

Dr. Wilcotte Rahming is employed by Wexford as Medical Director at Kilby. Doc. No. 25-1 at 1. He attached relevant portions of Crandle's medical records. Doc. No. 25-2. These records reflect that Dr. Barry, a physician at Jackson Hospital, assessed Crandle on August 19, 2021, for his hernia, at which time Crandle explained he had the hernia for ten years, but it was getting larger and causing him discomfort. *Id.* at 12, 14, 16. Medical staff assessed Crandle on his return from the hospital, noting his statements that "I got to stop smoking and weight restriction" and "I got to have surgery." *Id.* at 13, 15. A referral request was made August 19, 2021, for Crandle to have hernia surgery. *Id.* at 17.

Dr. Barry performed Crandle's hernia surgery on September 10, 2021. Doc. No. 25-

---

[7] In his sworn complaint, Crandle alleges that, on September 14, 2021, he walked back to his dorm carrying his bags which each weighed over 50 pounds. Doc. No. 1 at 3; Doc. No. 25-2 at 28. He points to no evidence implicating any of the named defendants with that matter, nor does he submit evidence that any of them were aware that he carried 50-pound bags after he was discharged from the medical unit.

1 at 5, Doc. No. 25-2 at 27. He was discharged to Kilby the same day. *Id.* Crandle's discharge instructions from Jackson Hospital reflect, among other things, that he received prescriptions for 650 milligrams of acetaminophen for pain, Alum-Mag Hydroxoide-Simeth (Mylanta) for indigestion, and Omeprazole. Doc. No. 25-2 at 27.

Following his surgery, Crandle was attended by medical staff while in the infirmary and after his release to population. Doc. No. 25-1 at 6; Doc. No. 25-2 at 25–26, 34–41, 46. Dr. Darbouze examined Crandle on September 13, 2021, and cleared him for discharge on September 14, 2021. Doc. No. 25-1 at 5; Doc. No. 25-2 at 35, 36; Doc. No. 35-1 at 2. Dr. Darbouze testified that Crandle's medical records do not show he had any problems from his hernia surgery and that his wound was clean, dry, and stable on his release from the infirmary. Doc. No. 25-2 at 34–41; Doc. No. 31-1 at 2. Further, Dr. Darbouze states Crandle's prescription for ibuprofen or Tylenol was appropriate for his post-surgery medical needs. Doc. No. 31-1 at 3; *see also* Doc. No. 25-1 at 5; Doc. No. 25-2 at 54.

Nurse Miles, at the direction of a physician, completed a health services communication form on September 14, 2021, indicating Crandle was clear to return to his dorm. Doc. No. 25-2 at 38; Doc. No. 39-1 at 2. Crandle's medical records do not show that Nurse Miles provided any further post-surgery nursing care. Doc. No. 39-1 at 2.

On September 16, 2021, Nurse Blessing performed a full assessment and evaluation of Crandle and observed that his surgical site was clean and dry. Doc. No. 25-2 at 42; Doc. No. 36-1 at 2. Crandle complained of post-surgery pain for six days and requested stronger pain medication. *Id.* Nurse Blessing noted Crandle had prescriptions for ibuprofen and Tylenol for pain. *Id.*; *see also* Doc. 25-2 at 54. Nurse Blessing also noted Crandle's belief

that he had to be on Percocet because "the hospital told him so." Doc. No. 25-2 at 42.

On September 22, 20221, Nurse Blessing evaluated Crandle for his complaints of loose stools and chest pain. Doc. 25-2 at 47; Doc. No. 36-1 at 2. Along with assessing Crandle for those complaints, Nurse Blessing found Crandle's surgical site was well healed and well approximated. *Id.* Nurse Blessing's medical notations made on September 22, 2021, do not show that Crandle voiced any complaints or issues about his post hernia surgery status. *Id.*

## V.    DISCUSSION[8]

### A.    Injunctive Relief

If Crandle's Complaint, in addition to seeking damages in this lawsuit, is considered to seek injunctive relief, the transfer or release of a prisoner renders claims for injunctive or declaratory relief moot. *See Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). When a plaintiff seeks injunctive relief, past injury "'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present

---

[8] Crandle signed the Complaint (Doc. No. 1) under penalty of perjury. Therefore, the Court will treat this pleading as evidence when ruling on the motions for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Crandle's response (Doc. No. 43) to Defendants' dispositive motions, however, is unsworn and not signed with an averment it was made under penalty of perjury. *See* 28 U.S.C. § 1746. The Court therefore does not treat its factual assertions as evidence on summary judgment. *Sears,* 922 F.3d 1206; *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (*citing Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (holding that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment"); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim" on summary judgment); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (explaining that unsworn statements, even by *pro se* parties, should not be "consider[ed] in determining the propriety of summary judgment").

adverse effects.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)); *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation and quotation marks omitted) (observing that, "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past"). Because Crandle is no longer incarcerated at Kilby, and because it does not appear that he is seeking prospective injunctive relief for an ongoing injury, any request for injunctive relief is moot.

### B.    Plaintiff's Deliberate Indifference Claim[9]

#### 1.    Standard of Review

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. To establish a deliberate indifference claim, a plaintiff must show: (1) that the alleged deprivation is, "objectively, 'sufficiently serious,'" and (2) the defendant acted with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994) (internal citation omitted).

The objective component of a deliberate indifference claim requires a plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed

---

[9] On July 15, 2024, the Court ordered the parties to submit a brief that addressed the recent deliberate indifference standard set forth in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024), and its applicability to Crandle's claims of inadequate medical care. Doc. No. 48. The parties filed responses. Docs. No. 49, 50. Although Plaintiff purported to file a response to the July 15 Order, it is unresponsive to the requested directive. *See* Doc. No. 50.

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation and internal quotation marks omitted). To violate constitutional standards, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (alteration omitted) (quoting *Farrow*, 320 F.3d at 1243). A serious medical need can also be determined by "whether a delay in treatment exacerbated the medical need or caused additional complications." *Id.*

To establish the subjective component of a deliberate indifference claim, the inmate-plaintiff must show that a state actor defendant's conduct amounted to subjective recklessness as applied in the criminal law. *See Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).[10] This requires a plaintiff to demonstrate "that the defendant was actually, subjectively aware that his own conduct," whether that "conduct" be action or inaction, "caused a substantial risk of serious harm to the plaintiff." *Id.* at 1258, 1262. Even if a defendant was aware of a substantial risk to an inmate-plaintiff's health or safety, if the defendant "'responded reasonably to the risk,'" he cannot be found liable under the Eighth

---

[10] Prior decisions by the Eleventh Circuit held both that the standard for establishing liability on the subjective prong of an Eighth Amendment deliberate indifference claim was "more than *mere* negligence" and "more than *gross* negligence." *See Wade*, 106 F.4th at 1255 (emphasis in original). The Eleventh Circuit reviewed *Wade* en banc to address its prior inconsistent precedent and to clarify the standard of review applicable to the subjective component of a claim alleging deliberate indifference to an inmate's health, safety, or well-being. *Id.* The *Wade* Court concluded that the correct *mens rea* standard for claims of deliberate indifference is criminal recklessness. *Id.* Notably, in a concurrence to the majority's opinion in *Wade*, the Honorable Adalberto Jordan found that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." *Id.* at 1265 (Jordan, J., concurring).

Amendment. *Id.* at 1262 (quoting *Farmer*, 511 U.S. at 844-45). A "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

### 2.    The Medical Defendants

Crandle challenges the adequacy of treatment he received when he returned to Kilby after receiving hernia surgery. He claims he was not given the medication prescribed to him by his doctor at Jackson Hospital, the medication prescribed for him at Kilby was insufficient to treat his pain and made him nauseous, his bandages had not been changed a week after his surgery, he was only seen by doctors at Kilby twice before being returned to his dorm, and that he was released to his dorm while still experiencing pain from the hernia surgery. Doc. No. 1 at 3.

Dr. Rahming, Dr. Darbouze, Nurse Epeagba, and Nurse Miles (the "medical defendants") deny Crandle's claims of deliberate indifference. Doc. No. 25. The medical defendants maintain that he received appropriate medical care at all times and that his medical care was not delayed or denied. Docs. No. 25-1, 35-1, 36-1, 39-1.

Crandle's unrefuted medical records show he received care for several days in Kilby's infirmary and continued to receive follow up care for his surgical site after he was released to his dorm. *See* Doc. No. 25-2. While Crandle claims he should have received different medical care and treatment, his allegations of deliberate indifference against the medical defendants reflect his belief that he did not receive the particular treatment or medication he requested or desired. However, "a simple difference in medical opinion

between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation and internal quotation marks omitted).

> As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with "a sufficiently culpable state of mind." [*Farmer v. Brennan*, 511 U.S. 825] at 834, 114 S. Ct. 1970 [1994] (quotation omitted). Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show "subjective recklessness as used in the criminal law." *Id*. at 839–40, 114 S. Ct. 1970. Indeed, even where "prison [or medical] officials ... actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk"—and, importantly for present purposes, "even if the harm ultimately was not averted." *Id*. at 844, 114 S. Ct. 1970.

*Swain v. Junior*, 961 F.3d 1276, 1285–86 (11th Cir. 2020).

Assuming Crandle's condition presents an objectively serious medical need, he has identified no specific facts nor provided evidence that could create a triable jury issue on whether the conduct of the medical defendants was deliberately indifferent to his medical needs. He claims that he did not receive appropriate or adequate treatment, but nothing in the record evidence indicates he required treatment different from what he received from the medical defendants at Kilby. Indeed, the medical defendants prescribed and provided a conservative pain medication for Crandle's post-surgical pain as similar to the acetaminophen prescribed for pain by the Jackson Hospital physician, and Crandle has presented no evidence that the provision of pain medication by the medical defendants constituted deliberate indifference. *See Monteleone v. Corizon*, 686 F. App'x 655, 659–60 (11th Cir. 2017) ("Although [the jail physician's] failure to substitute a more effective

medication may constitute negligence, it does not rise to the level of deliberate indifference. … [D]etermining which medication to prescribe is generally a matter of medical judgment, and [the inmate is] required to do more than question [a physician's] medical judgment to overcome a summary judgment ruling on [a] § 1983 claim." (citations omitted)). Viewing the facts in the light most favorable to Crandle, there is no evidence that the provision of dressing changes made by the medical defendants constituted deliberate indifference as the record evidence shows that the surgery sites from the hernia surgery were clean on September 16, 2021 and well healed on September 22, 2021. (Doc. No. 25-2 at 42, 47.) Nor does the record evidence indicate that the course of treatment provided by the medical defendants "presented a substantial risk of serious harm . . . but [they] persisted in the course of treatment anyway." *Campbell v. Sikes*, 169 F.3d 1353, 1370 (11th Cir. 1999). Despite Crandle's complaints about delays in dressing changes, the frequency of physician examinations, and the effectiveness of his medication, the record belies Crandle's claims that the medical defendants' involvement with his medical care was inadequate, detrimental to his serious medical needs, or rose to the level of "subjective recklessness as used in the criminal law." *Wade*, 106 F.4th at 1262; *Hoffer v. Sec'y, Fla. Dep't. of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020) (the obligation to provide medical care "doesn't necessarily demand curative care"). That is, Crandle has provided no evidence, nor do the unrefuted medical records reflect, that the medical defendants knew their own actions or inactions in treating Crandle post-operatively caused a substantial risk of serious harm to him, and with such knowledge, they unreasonably disregarded that risk.

For these reasons, the Court finds Crandle has failed to submit sufficient evidence to establish the elements of his deliberate indifference claim. Crandle has thus failed to demonstrate the medical defendants violated his rights under the Eighth Amendment, and their motion for summary judgment is due to be granted.

### 3.    Wexford Health Sources, Inc.

If the Court construes Crandle's Complaint to assert that Wexford has a policy or custom that resulted in the medical defendants' deliberate indifference regarding his post-operative medical care, this claim is unavailing.[11] Crandle not only fails to allege any facts supporting such a finding, but he identifies no policy or custom that led to his challenged injuries.

Although Wexford is a private entity, it may be held liable under § 1983 because it contracted with the jail to provide medical care to inmates, a "function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 454 (11th Cir. 1997) (per curiam). The law is settled that, generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted). The Eleventh Circuit has extended that rule to

---

[11] In his concurrence to the majority's opinion in *Wade*, 106 F.4th 1251, Judge Jordan observed that the decision did "not concern the Eighth Amendment deliberate indifference standard for municipalities under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)," explaining that the decision in *Farmer*, 511 U.S. 825, established the deliberate indifference standard for "individuals who are sued for Eighth Amendment violations." *Id.* at 1264 (Jordan, J., concurring).

private corporations like Wexford. *See, e.g.*, *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Thus, to prevail on a claim of deliberate indifference to medical needs against Wexford, Crandle "must first show that [Wexford] … advanced 'a "*policy or custom*" of deliberate indifference that led to the violation of [Crandle's] constitutional right' before satisfying the discrete requisites of [his] deliberate indifference claims." *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022) (emphasis in original) (citing *Craig*, 643 F.3d at 1310).

"In the absence of an official policy endorsing a constitutional violation, a plaintiff must show: (1) that [Wexford] had a custom or practice of permitting such a violation; and (2) that this custom or practice was the 'moving force' behind the violation." *Roy*, 53 F.4th at 1347 (citing *Craig*, 643 F.3d at 1310).

The challenged policy or custom need not be express. A policy is "a decision that is officially adopted" or created on behalf of the entity. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is any practice that is "so settled and permanent" as to carry the force of law. *Id*. To establish the existence of a custom, the evidence must show more than an isolated incident leading to constitutional injury and, instead, reflect the pattern is widespread. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). To show the practice at issue is widespread enough to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must produce sufficient evidence of a "series of constitutional violations from which deliberate indifference can be inferred."

*Id.* (quoting *Est. of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

Crandle has produced insufficient evidence to show a genuine dispute of material fact as to any of Wexford's policies or customs reflective of deliberate indifference to his serious medical needs. Crandle identifies no facts and produces no evidence of a custom or policy of Wexford to withhold necessary medical care or treatment and no evidence of any permanent widespread practice to deny necessary medical care or treatment. *See Craig*, 643 F.3d at 1310. Accordingly, Wexford's motion for summary judgment is due to be granted on Crandle's Eighth Amendment claim.

## VI.    SUPPLEMENTAL JURISDICTION

Although it does not appear that Crandle alleged any state-law claims with his federal claims under § 1983, construing the Complaint liberally, it implicates the state torts of negligence or medical malpractice. These claims are subject to dismissal, as review is only appropriate upon exercise of the Court's supplemental jurisdiction. *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (quotation marks and citations omitted) (holding that "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (finding the exercise of supplemental jurisdiction is discretionary). In the posture of this case, the exercise of supplemental jurisdiction is inappropriate based on the Court's dismissal of all the claims over which the Court has original jurisdiction. *See* 28

U.S.C. § 1367(c)(3) (allowing district courts to decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction").

## VII.  CONCLUSION

For these reasons, the Magistrate Judge RECOMMENDS the following:

1.      Defendants' Special Reports (Docs. No. 19, 25) be CONSTRUED as motions for summary judgment.

2.      Defendants' Motions for Summary Judgment (Docs. No. 19, 25) be GRANTED as to Plaintiff's claims under 42 U.S.C. § 1983 and these claims be DISMISSED with prejudice.

3.      The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(c)(3) and DISMISSES these claims without prejudice.

4.      Judgment be entered in favor of Defendants and against Plaintiff, with Plaintiff taking nothing by his claims in the Complaint as to his § 1983 Claims.

Further, it is ORDERED that by **August 29, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo

determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Resol. Tr. Corp., v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11TH CIR. R. 3-1.

The Clerk of the Court is DIRECTED to correct the docket sheet to reflect the correct spellings of the names of the following Defendants: Nurse Blessing Epeagba, Dr. Jean Darbouze, and Nurse Fallon Miles.

DONE this 15th day of August, 2024.

_____

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE